# EXHIBIT E

Ec24reys

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        13 CR 51 (PGG)

5   ARCADIO REYES-ARIAS,

6              Defendant.

7   ------------------------------x

8                                       New York, N.Y.
                                        December 2, 2014
9                                       2:40 p.m.

10
    Before:
11
                    HON. PAUL G. GARDEPHE,
12
                                        District Judge
13

14                      APPEARANCES

15
    PREET BHARARA
16      United States Attorney for the
        Southern District of New York
17  EDWARD DISKANT
        Assistant United States Attorney
18
    MARGARET SHALLEY
19      Attorney for Defendant

20  ALSO PRESENT:  FRANCISCO OLIVERA, Spanish Interpreter

21

22

23

24

25

Ec24reys

1          (Case called)

2          THE COURT:  This matter is on my calendar for purposes

3   of sentencing and preparation for sentencing.

4          I have read the presentence report dated November 24,

5   2014.  I have read Ms. Shalley's submission dated

6   November 25th, along with the letters from the defendant's

7   family.  I have also read the government's 5K letter dated

8   November 16, 2014.

9          Ms. Shalley, have you read the presentence report and

10   its recommendation and discussed it with your client?

11          MS. SHALLEY:  Yes, I have.

12          THE COURT:  Mr. Reyes-Arias, has the presentence

13   report been read to you in Spanish, and have you discussed it

14   with Ms. Shalley?

15          THE DEFENDANT:  Yes, sir.

16          THE COURT:  Ms. Shalley, do you have any objections to

17   the factual portions of the presentence report?

18          MS. SHALLEY:  Yes.  On page 3 of my submission, there

19   were a series of objections.  I think the first one,

20   paragraph 43, is resolved by the restitution amount, your

21   Honor.

22          THE COURT:  So I take it that you're agreeable to the

23   proposed order of restitution that provides for a $7 million

24   amount?  You're okay with that?

25          MS. SHALLEY:  That's correct, your Honor.

Ec24reys

1          THE COURT:  Let me take a look at paragraph 43 and see

2     if there is anything that needs to be changed.  Are you asking

3     me to make any changes to paragraph 43?

4          MS. SHALLEY:  Do we just want to leave it at

5     $7 million?

6          THE COURT:  I think it's accurate.  It reflects a

7     guidelines range.  That's where the 7 million to 20 million

8     comes from.

9          MS. SHALLEY:  No, I understand that.  It makes it

10     sound like its a restitution amount as well.  It is the

11     guidelines range, that's correct.  I guess the Court wants to

12     leave it the same?

13          THE COURT:  I don't think it's inaccurate.

14          MS. SHALLEY:  Okay.  Paragraph 82 --

15          THE COURT:  Yes.

16          MS. SHALLEY:  -- which was not one of my original

17     objections, the description underneath, where it says that the

18     defendant, arrested under the name Jose Reyes, still needs to

19     be fingerprinted and a New Jersey State Bureau of

20     Identification number obtained before he can be accepted by the

21     county police to begin service of his sentence.

22          He actually served three and a half months, and the

23     sentence is done.  So I would ask that that be stricken.  In

24     fact, by virtue of paragraph 86, which shows another arrest

25     later in 2011, with the case being dismissed in 2012, if he

Ec24reys

1    hadn't already served the sentence, a warrant would have popped

2    up at that time.

3          THE COURT:  If I understand what you're saying, you

4    just want me to strike that sentence under paragraph 82?

5          MS. SHALLEY:  Correct.  Because he already served the

6    sentence.

7          THE COURT:  Any objection to that, Mr. Diskant?

8          MR. DISKANT:  No, your Honor.

9          THE COURT:  I will direct that sentence under

10    paragraph 82 be deleted from the report.

11          Go ahead, Ms. Shalley.

12          MS. SHALLEY:  Paragraph 87, the first, second, and

13    third sentences.  He is the second of nine children, not eight.

14          THE COURT:  All right.  We will make that change.

15          MS. SHALLEY:  Paragraph 94, he has one additional

16    child, a 13-year-old son who lives in Boston, Massachusetts.

17    So there are six children altogether.

18          THE COURT:  All right.  So I will add a sentence just

19    stating that the defendant also has a 13-year-old son who lives

20    in Boston.

21          MS. SHALLEY:  Okay.  The only other -- it's not really

22    an objection, it's a clarification on paragraph 112.

23          THE COURT:  Yes.

24          MS. SHALLEY:  The defendant hasn't filed tax returns

25    yet because it is a condition of supervised release.  He is

Ec24reys

1    still incarcerated.  There is no reason he would have already

2    filed them.  The way it reads, it makes it sound like there was

3    something he was supposed to do and he didn't, which is

4    inaccurate.

5          THE COURT:  I understand that.  Do you want me to

6    change any of the language in this paragraph?

7          MS. SHALLEY:  Maybe eliminate the last line.

8          THE COURT:  All right.  You don't have any objection

9    to that, Mr. Diskant?

10          MR. DISKANT:  No, your Honor.

11          THE COURT:  The last sentence will be struck.

12          Anything else with respect to the factual portions of

13    the presentence report, Ms. Shalley?

14          MS. SHALLEY:  No, your Honor.

15          THE COURT:  Mr. Diskant, does the government have any

16    objection to the factual portions of the presentence report?

17          MR. DISKANT:  No, your Honor.

18          THE COURT:  With the corrections that I have gone over

19    with Ms. Shalley, other than those corrections, I adopt the

20    factual portions of the presentence report.

21          Although I'm not required to impose sentence in

22    accordance with the sentencing guidelines, I am required to

23    consider the recommended sentencing range.  Here, the defendant

24    pleaded guilty to four separate counts.  The Probation

25    Department grouped the first two counts, which relate to the

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

Ec24reys

1   conviction for health care fraud offense.   The base offense

2   level for those counts was level 7.   There was a 20-level

3   increase imposed because the loss amount for Counts One and Two

4   exceeded $7 million but was less than $20 million.   There was a

5   further three-level increase because the offenses were federal

6   health care fraud offenses that involved a government health

7   care program and the loss amount was more than $7 million.   A

8   further two-level increase was imposed because the offense

9   involved acts that could have exposed others to the risk of

10  death or serious bodily injury.   All of these calculations

11  yielded a total offense level for Counts One and Two of 32.

12       The Probation Department also did calculations with

13  respect to the remaining two counts, which relate to a mortgage

14  fraud offense and an offense involving using animals for

15  purposes of conducting contests.   Because the calculations for

16  those two counts are much lower than the calculations for

17  Counts One and Two, the offense level for Counts One and Two is

18  what controls here.   As I mentioned, the combined offense level

19  for those counts is level 32.   There was a reduction of three

20  levels for acceptance of responsibility, resulting in a total

21  offense level of 29.

22       The Probation Department determined that the defendant

23  has two criminal history points.   Accordingly, he falls into

24  criminal history category II.   Offense level 29 at criminal

25  history category II yields a guidelines range of 97 to

Ec24reys

1    121 months' imprisonment.

2              Ms. Shalley, any objection to the accuracy of those

3    calculations?

4              MS. SHALLEY:  No, your Honor.

5              THE COURT:  Mr. Diskant, any objection to the accuracy

6    of those calculations?

7              MR. DISKANT:  No, your Honor.

8              THE COURT:  Based on my independent evaluation of the

9    sentencing guidelines, I find that the offense level is 29, the

10   criminal history category is II, and the guidelines recommend a

11   sentence to 97 to 121 months of imprisonment, all subject to

12   the government's Section 5K1.1 motion, of course.

13             Ms. Shalley, I will hear from you as to an appropriate

14   sentence.

15             MS. SHALLEY:  Yes, your Honor.  We ask for a sentence

16   of time served.  Just so the Court is aware, the defendant's

17   mother, five children, one brother, two nephews, a niece, and

18   his sister-in-law are all in court for his sentencing.  It is a

19   very large and supportive family.

20             We have asked for a sentence of time served.

21   Mr. Reyes-Arias is 43 years old.  As the Court is aware, he was

22   raised in the Dominican Republic under conditions of extreme

23   poverty.  There were nine children sleeping in a bed.  There

24   was not enough food to eat.  He left school in the seventh

25   grade and began to work in order to help support his younger

Ec24reys

1    siblings.  And as the letters attest to, he worked and saved

2    and eventually paid for his two sisters to go to college and

3    paid medical bills for his sister and mother, as well as

4    supporting six children of his own.

5         Since arriving in the United States in 1995, he has

6    been consistently employed; first, as a factory worker, and

7    then in the grocery store of Bladimir Rigo, and ultimately in

8    2005, he was able to open his own business.

9         While he worked for Mr. Rigo, he was introduced to the

10   secondhand prescription scheme; and as part of his job at the

11   market, he would purchase the medications from people who came

12   in, and then Rigo would then take them and resell them.

13        As Mr. Reyes-Arias stated in the probation report, he

14   expressed remorse.  Once he was in jail in the instant matter

15   and was completely sober -- he had a drinking problem since

16   1998 -- and he thought through the actions and really

17   understood what happened -- he only has a seventh grade

18   education -- it became clear to him that the implication of the

19   actions were that there could be people at the end of the chain

20   receiving medications that had expired and that was something

21   that he really had never thought and thought through.  As a

22   result of that, he wanted to cooperate because he thought it

23   was the right thing to do.  He thought he should assist the

24   government because he realized his actions could have hurt a

25   number of people, and there was no way he could find out who

Ec24reys

1    they were or what else to do.  In doing so, he admitted to two

2    additional crimes, the mortgage fraud and the cockfighting or

3    animal fighting and gambling with it.  His information was

4    important and necessary and led to the charging and conviction

5    of Bladimir Rigo.  He testified at a Fatico hearing, and the

6    government believed his testimony was truthful, complete, and

7    reliable and was corroborated by recorded conversations, as

8    well as physical evidence.

9        His voluntary cooperation resulted in an increase of

10   his guideline range, basically doubling it, and an increase in

11   a restitution amount, which was originally $200,000, was the

12   amount he was originally charged with, to $7 million, which I

13   think -- my math being questionable -- is 35 times the original

14   amount that he would have owed in restitution.

15       In light of his substantial assistance and the facts

16   of the rest of his life, the 3553(a) factors, he was a good

17   father, brother, husband, he has been good to his children, he

18   supported all of those around him, I believe a sentence of time

19   served is sufficient but not greater than necessary.

20       Notably, the other person who was charged at the same

21   time, who was in front of Judge Daniels, Leyba, was basically

22   charged with the same amount of Medicare loss of $184,000 as

23   opposed to $200,000, he received a sentence of three years'

24   probation and six months' home confinement.

25       The defendant made a very conscious choice to

Ec24reys

1    cooperate and to substantially increase his guidelines range

2    based upon clear understanding of the effects of his actions,

3    and I'm asking the Court to take notice of that and to sentence

4    him in accordance with that to time served.

5            THE COURT:  All right.  Ms. Reyes-Arias, is there

6    anything you want to say before the Court imposes sentence?

7            THE DEFENDANT:  Yes, sir.

8            I want to apologize to this country, and I apologize

9    to my family, my children, for the suffering that I have caused

10   them.  That's all, your Honor.

11           THE COURT:  All right.  Mr. Diskant, anything for the

12   government?

13           MR. DISKANT:  Yes, your Honor.  Thank you.

14           The government does move, consistent with its letter,

15   at this time, pursuant to Section 5K1.1 of the sentencing

16   guidelines, for the Court to consider the factors set forth in

17   that section and consider a downward variance in imposing

18   sentence.

19           To echo in some respects some of the information and

20   build on some of the information Ms. Shalley provided, the

21   defendant's cooperation in this case was substantial and

22   important.  In particular, the defendant helped identify and

23   prosecute one of the largest participants in a massive

24   nationwide secondhand prescription drug scheme, an individual

25   who it would have been quite difficult for the government to

Ec24reys

1   charge and successfully prosecute had the defendant not chosen

2   to cooperate.  As part of that cooperation, the defendant took

3   the stand last month and testified, to the government's belief,

4   truthfully and credibly, about his involvement with this other

5   individual, Bladimir Rigo.  And while Judge Sweet has reserved

6   decision on the issues at stake in that hearing, I have no

7   doubt Mr. Reyes-Arias' testimony, it was quite important to the

8   government's case, presentation in that hearing, and is likely

9   to weigh heavily on Judge Sweet in reaching his decision.

10          I also want to note for the Court, consistent with

11   what Ms. Shalley said, that it is absolutely true from the

12   government's perspective that in considering the appropriate

13   sentence in this case, the defendant's guidelines range is

14   driven vastly by information that he provided as part of his

15   cooperation; and had the defendant chose not to cooperate and

16   had he simply expressed a desire in pleading pursuant to an

17   agreement after his arrest, my guess is that his guidelines

18   range would have been close to -- actually was, in effect --

19   time served at this point because the government's information

20   about the loss caused by this defendant would have been far

21   closer to approximately $200,000.

22          In light of those facts, in light of the information

23   he provided and the cooperation he provided and in light of the

24   fact that the guidelines here are driven by information

25   provided as part of that cooperation, the government would urge

Ec24reys

1    the Court to consider those factors in imposing sentence.

2         THE COURT:  Mr. Diskant, I had gotten a sense from

3    your submission that the government believed that the loss

4    amount was in the vicinity of $10 million.  The restitution

5    order is in the amount of $7 million.  Should I assume from

6    that the government believes that the appropriate amount is

7    $7 million dollars?

8         MR. DISKANT:  I think that is fair, your Honor.  We

9    certainly view the defendant as appropriately in that

10   guidelines range, 7 to 20 million.

11        THE COURT:  All right.  In deciding upon an

12   appropriate sentence, I have considered all of the factors

13   listed in Title 18, United States Code, Section 3553(a),

14   including the nature and circumstances of the defendant's

15   offense, his personal history and characteristics, the need for

16   the sentence imposed to reflect the seriousness of the offense,

17   the need to promote respect for the law, to provide just

18   punishment, and to afford adequate deterrence.

19        This case arises from an investigation conducted by

20   the FBI into the sale of secondhand prescription drugs in New

21   York City and its vicinity.  The prescription drugs at issue

22   were for very serious medical conditions, including HIV,

23   schizophrenia, and asthma.  The drugs were originally dispensed

24   to recipients in the New York City area, typically Medicaid

25   recipients.  These individuals sold the drugs into collection

Ec24reys

1    and distribution channels that ultimately ended at pharmacies

2    that resold the secondhand drugs to unsuspecting consumers.

3            For approximately 12 years, the defendant bought these

4    types of drugs from Medicaid recipients and resold them to

5    large-scale aggregators.  Given that the individuals who would

6    take these type of drugs suffered from serious illnesses and

7    given that the drugs were not stored under appropriate

8    conditions and in some cases might have expired, the

9    defendant's conduct presented a significant risk of harm to the

10   public.

11           The defendant was arrested after another individual,

12   who I will refer to as the cooperating witness, told the FBI

13   that he had purchased significant quantities of secondhand

14   drugs from the defendant on a monthly basis for approximately

15   five years.  The cooperating witness stated that he had paid

16   the defendant eight to ten thousand dollars each month, a sum

17   that was considerably less than the Medicaid reimbursement

18   value of these drugs.

19           After the cooperating witness made two controlled

20   purchases of secondhand drugs from the defendant, he was

21   arrested.  The two transactions involved drugs with a Medicaid

22   reimbursement value of approximately $100,000.  At the time of

23   his arrest, agents recovered an additional 160 bottles of

24   secondhand medicine from the defendant.  These drugs had a

25   Medicaid reimbursement value of $75,000.

Ec24reys

1          All told, the government estimates that the total loss
2     caused by the defendant's involvement in the conspiracy was
3     approximately $7 million.
4          Shortly after his arrest, the defendant began
5     cooperating with the government.  As a result of that
6     cooperation, the government learned about other criminal acts
7     by the defendant, which resulted in him pleading guilty, not
8     only to the health care fraud, but also to a separate mortgage
9     fraud scheme, as well as the cockfighting that we have heard
10    about from defense counsel.
11         With respect to the defendant's personal history and
12    characteristics, he is 43 years old, was born in the Dominican
13    Republic.  He grew up under very poor conditions.  In 1994, he
14    married, and he and his wife at that time came to this country
15    in 1995.  The couple had three children but divorced in 1998.
16    The children currently live with the defendant's ex-wife.  In
17    addition, the defendant has two children by an ex-girlfriend
18    and a 13-year-old son who lives in Boston.
19         As to education and employment, the defendant dropped
20    out of school in the Dominican Republic.  He does have a
21    consistent history of employment since his arrival in the
22    United States in 1995.  He's worked as a factory worker and a
23    general laborer.  In 2002, he and a partner bought a grocery
24    store in Newark.  The defendant worked at that store from 2002
25    until his arrest.

Ec24reys

1      There is no evidence that the defendant has used

2  illegal drugs, but he does have an alcohol problem, including a

3  conviction for driving while intoxicated.

4      As to cooperation, the government represents that the

5  defendant provided information that was used to charge a far

6  more significant participant in the scheme, a man named

7  Bladimir Rigo.   Mr. Rigo pleaded guilty to fraud charges; and

8  as we heard from the assistant, the defendant testified at a

9  Fatico hearing concerning Mr. Rigo.

10      The government has asked me to sentence the defendant

11  in light of the factors set forth in Section 5K1.1 of the

12  sentencing guidelines.   Those factors include the significance

13  and usefulness of the defendant's assistance; taking into

14  account the government's evaluation; the truthfulness,

15  completeness, and reliability of any information or testimony

16  that the defendant provided; the nature and extent of the

17  defendant's assistance; any injury suffered or any risk of

18  injury to the defendant or his family resulting from his

19  assistance, and the timeliness of the defendant's assistance.

20      Here it is clear that the defendant's cooperation was

21  timely.   He expressed interest in cooperating shortly after his

22  arrest.   It is also clear from the government's letter that the

23  defendant immediately identified Mr. Rigo as one of the major

24  high-level aggregators to whom he sold the prescription drugs.

25  He provided detailed and credible information about Mr. Rigo

Ec24reys

1    and those who worked for him.  Based in large part on that

2    information, the government was able to charge Mr. Rigo, who

3    was arrested in November 2013 and who pled guilty in April of

4    2014.  As we've heard, the defendant was called upon to testify

5    at a Fatico hearing regarding Mr. Rigo, and the government

6    reports that the defendant testified truthfully at that hearing

7    concerning his own involvement in a scheme as well as

8    Mr. Rigo's participation in it.

9           It is also worth noting, as has been pointed out by

10   counsel, that the defendant provided extensive information to

11   the government about his own criminal activity.  This

12   information gave the government a much more complete

13   understanding of the true scope of the defendant's criminal

14   activity and increased the loss amount under the sentencing

15   guidelines from something in the area of $200,000 to

16   approximately $7 million.  That had an enormous effect on the

17   guidelines calculations.

18          My conclusions are that the defendant's cooperation

19   was timely; that he was candid and truthful in his meetings

20   with the government and in his testimony at the sentencing

21   hearing; and that he provided truthful information which led to

22   the arrest and guilty plea of a significant aggregator of

23   secondhand drugs.

24          The guidelines recommend a sentence of 97 to

25   121 months' imprisonment.  The Probation Department has

Ec24reys

1    recommended a sentence of 30 months' imprisonment.   The

2    government has asked that the defendant be sentenced in light

3    of the factors set forth in Section 5K1.1.   The defendant seeks

4    a sentence of time served, which would amount to approximately

5    24 months.

6            With all these facts in mind, I will now describe the

7    sentence that I intend to impose, and then I will ask the

8    parties if there is anything further they wish to say.   In

9    recognition of the substantial assistance the defendant

10   provided to the government, I do intend to depart from the

11   applicable guidelines range.   I have taken into account the

12   cooperation the defendant provided, but also considered the

13   serious nature of his crime, which went on for approximately

14   12 years and which resulted in a large loss to the Medicaid

15   program.   Health care fraud of this sort is extremely difficult

16   to detect, and when it is discovered, it must be treated as the

17   serious crime that it is.

18           Having said all that, I do conclude that a sentence of

19   time served is appropriate given the entire record, including

20   the significance of the defendant's cooperation and all the

21   background information that I have relayed concerning his

22   personal circumstances.

23           It does seem unlikely to me that the defendant will

24   engage in criminal conduct in the future.   He has already

25   served two years in jail.   He will be subject to a large order

18

Ec24reys

1   of restitution.  He does face some risk of deportation as a

2   result of his convictions.  So it does seem to me that

3   considering all of the sanctions that the defendant has faced

4   and will face, that a sentence of that sort is appropriate with

5   respect to the goals of personal and general deterrence.

6           I intend to impose a sentence of three years'

7   supervised release to run concurrently on each of Counts One

8   through Four, and the sentence of supervised release will be

9   served under the following conditions:  The defendant shall not

10  commit another federal, state, or local crime.  He shall not

11  illegally possess a controlled substance.  He shall not possess

12  a firearm or destructive device.  I intend to suspend the

13  mandatory drug testing condition based on my determination that

14  the defendant poses a low risk of future drug abuse.  The

15  defendant will cooperate in the collection of DNA as directed

16  by the probation officer.

17          I intend to impose the first 13 standard conditions of

18  supervised release, along with the following special

19  conditions:  The defendant will abide by the directives of the

20  Immigration and Customs Enforcement Service.  He will submit

21  his person, residence, place of business, vehicle, or any other

22  premises under his control to a search on the basis that the

23  probation officer has a reasonable belief that contraband or

24  evidence of a violation of the conditions of the supervised

25  release may be found.  Any search must be conducted at a

Ec24reys

1   reasonable time and in a reasonable manner.  Failure to submit

2   to a search may be grounds for revocation.  The defendant will

3   inform any other residents that the premises may be subject to

4   search pursuant to this condition.  The defendant will

5   participate in an alcohol aftercare treatment program, which

6   may include testing via Breathalyzer at the direction and at

7   the discretion of the probation officer.  The defendant will

8   provide the probation officer with access to any requested

9   financial information.  The defendant will not incur new credit

10  charges or open additional lines of credit without the approval

11  of the probation officer, and the defendant is to report to the

12  probation officer within 72 hours.

13          I do not intend to impose a fine because I find that

14  taking into account the financial sanctions that will be

15  imposed on the defendant, he lacks the ability to pay a fine.

16  I'm required to impose a $400 special assessment.  I intend to

17  order the defendant to make restitution to the New York State

18  Department of Health in the amount of $7 million dollars.

19          Mr. Diskant, is the government seeking an order of

20  forfeiture?

21          MR. DISKANT:  No, your Honor.

22          THE COURT:  Ms. Shalley, is there anything further you

23  wish to say?

24          MS. SHALLEY:  No, your Honor.

25          THE COURT:  Mr. Reyes-Arias, is there anything further

Ec24reys

1    you wish to say?

2              THE DEFENDANT:  Thank you, your Honor.

3              THE COURT:  Mr. Diskant, anything else for the

4    government?

5              MR. DISKANT:  Yes, your Honor.  There is an underlying

6    indictment that the government would move to dismiss at this

7    time.

8              THE COURT:  That motion is granted.

9              Mr. Reyes-Arias, for the reasons I just stated, it is

10   the judgment of this Court that you are sentenced to time

11   served and three years of supervised release to run

12   concurrently on each of Counts One through Four.  While on

13   supervised release, you will be subject to the conditions that

14   I just listed.  You are ordered to pay a special assessment in

15   the amount of $400.  You are further ordered to pay restitution

16   in the amount of $7 million.  Restitution payments are to be

17   made to the Clerk, U.S. District Court, Southern District of

18   New York, 500 Pearl Street, New York, New York 10007, for the

19   New York State Department Of Health, Attention Mr. Dennis

20   Wendell, Chief Accountant, Fiscal Management Group, Corning

21   Tower, Room 2737, Empire State Plaza, Albany, New York 12337.

22             Mr. Reyes-Arias would be jointly and severally liable

23   with Bladimir Rigo for the $7 million in restitution.  The

24   restitution will be paid in monthly installments of 10 percent

25   of the gross monthly income over a period of supervision to

Ec24reys

1    commence 30 days from today.  The defendant will notify the

2    U.S. Attorney for this district within 30 days of any change of

3    mailing or residence address that occurs while any portion of

4    the restitution remains unpaid.

5         Mr. Reyes-Arias, I'm also required to advise you of

6    your appeal rights.  You can appeal your conviction if you

7    believe that your guilty plea was unlawful or involuntary or if

8    there was some other fundamental defect in the proceedings that

9    was not waived by your guilty plea.  You also have a statutory

10   right to appeal your sentence under certain circumstances.

11   With few exceptions, any notice of appeal must be filed within

12   14 days of judgment being entered in your case.  Judgment will

13   likely be entered tomorrow.  Ms. Shalley will discuss with you

14   whether or not you wish to file a notice of appeal.  If you're

15   not able to pay the costs of an appeal, you may apply for leave

16   to appeal in forma pauperis.  If you request the clerk of the

17   Court, we will prepare and file a notice of appeal on your

18   behalf.

19         Is there anything further?

20         MR. DISKANT:  Not from the government.

21         MS. SHALLEY:  No, your Honor.  Thank you.

22         THE COURT:  All right.

23         (Adjourned)

24

25