SPEARS & IMES LLP

51 Madison Avenue
New York, NY 10010
tel  212-213-6996
fax 212-213-0849

Joanna C. Hendon
tel 212-213-6553
jhendon@spearsimes.com

May 14, 2015

**BY ECF & HAND DELIVERY**

Hon. Robert W. Sweet
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *United States v. Bladimir Rigo*, 13 Cr. 897 (RWS)

Dear Judge Sweet:

I write on behalf of the defendant, Bladimir Rigo, who is scheduled to be sentenced by Your Honor on May 19, 2015 at 4:30 pm. I am in receipt of the Government's Sentencing Memorandum, dated May 12, 2015 ("Gov. Sent'g Br."), and the Court's Sentencing Opinion, of the same date ("Sentencing Opinion" or "Sent'g Op.").

The Government asks the Court to impose a "substantial sentence of incarceration" (Gov. Sent'g Br. at 8); the Probation Department recommends a period of incarceration of 48 months, followed by three years' supervised release (PSR at 26-28)[1]; and the Court has indicated that, subject to the hearing on May 19th, it intends to sentence Mr. Rigo to 48 months' incarceration, followed by three years' supervised release (Sent'g Op. at 1).

Because a sentence of four years' incarceration for a seventy-five year old, with no criminal history points and no enhancement for a managerial role, is "greater than necessary[] to accomplish the goals of sentencing," *see Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal quotation marks and citation omitted), I respectfully write to underscore matters that may not have been considered by the Probation Department.

---

[1] Unless otherwise defined, capitalized terms used herein have the same meanings as set forth in the Sentencing Memorandum on Behalf of Mr. Rigo, dated May 5, 2015 ("Sentencing Submission" or "Sent'g Submission").

Hon. Robert W. Sweet
May 14, 2015                                                                                              Page 2

     A sentence of four years is too long, given Mr. Rigo's age and the reduced risk of recidivism posed by this case. At age seventy-five, Mr. Rigo is statistically unlikely to recidivate. *See* U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES 28 (2004) (finding that the recidivism rate for defendants over age 50 in Criminal History Category I was a mere 6.2%); *see also* U.S.S.G., ch. 4, pt. A introductory cmt. (2014) ("[E]mpirical research has shown that other factors are correlated highly with the likelihood of recidivism, *e.g.*, age . . . ."). This factor favors a sentence of less than 48 months of incarceration. In addition, as set forth in our main sentencing brief, Mr. Rigo is truly sorry for his participation in the Scheme. Having witnessed the strain and distress that his family has endured as a result of his criminal activity and conviction, he has no desire to put them through such suffering again. These factors too suggest that he is unlikely to recidivate and weigh against a lengthy period of incarceration.

     Second, the Probation Department appears not to have considered the fact that each of Mr. Rigo's co-conspirators received a sentence of time served or probation. The Government points out that two of these, Mr. Fernandez and Mr. Reyes-Arias, received sentencing letters pursuant to Section 5K1.1 of the Guidelines (Gov. Sent'g Br. at 10-11), a distinction that ordinarily would be meaningful. With respect to Mr. Reyes-Arias, however, it is not. That is because his cooperation – which was wholly with respect to Mr. Rigo – was marred by significant perjury in this Court (*see Fatico* Opinion at 21), something the prosecutors were duty-bound to bring to the attention of the Honorable Paul Gardephe, Mr. Reyes-Arias's sentencing judge. Thus, in considering an appropriate sentence for Mr. Rigo, the Court should consider the fact that a failed cooperator, and long-standing, central figure in the Scheme, received a sentence of time served.

     The remaining co-conspirator, Mr. Leyba, was sentenced, as Mr. Rigo will be, without any 5K1.1 letter. (*Fatico* Opinion at 6; Tr. of Rogelio Leyba Sent'g Hr'g 3:11-13, dated Sept. 3, 2014, *United States v. Leyba*, 13-cr-55 (GBD) (S.D.N.Y.) (Dkt. No. 34) ("Leyba Sent'g Tr.").) The Government twice caught Mr. Leyba red-handed, selling black-market medications in furtherance of the Scheme. (*Fatico* Opinion at 6.) Agents obtained a search warrant for Mr. Leyba's stash house, yielding hundreds of containers of black-market medicine. (*Id.* at 7.) Mr. Leyba's own statements demonstrate he was active in the Scheme for more than sixteen years, serving more than five customers (including Mr. Rigo) during that time. (*See* Leyba 3505-21-22.) With respect to Mr. Leyba, the Guidelines called for, and the Government sought, a sentence of between 18 and 24 months' imprisonment. (*See* Leyba Sent'g Tr. at 3:3-6, 13:13-14.) Judge Daniels imposed a sentence of three years' probation, with a period of six months' home confinement. (*Id.* at 23:2-12.)

Hon. Robert W. Sweet
May 14, 2015                                                                          Page 3

A sentence of four years' incarceration for Mr. Rigo, who engaged in no undercover sales of black-market medications, who had no black-market medications in his possession or at his home at the time of his arrest, whom the Government does not connect to either of the stash houses or any of the seizures of medications in this case, and with respect to whom the Probation Department declined to recommend any enhancement under the Guidelines for a senior or managerial role, would result in unwarranted disparities in sentencing across similarly situated defendants. *See United States v. Ortiz-Zayas*, No. 02-cr-837 (RWS), 2005 WL 1430489, at *3 (S.D.N.Y. June 17, 2005) (Sweet, J.) (finding that, notwithstanding differences in prior criminal history, term of incarceration that was five times longer for one defendant was "disproportionately long in comparison to that imposed on [co-defendant]," and imposing non-Guidelines sentence "[i]n order to reduce this disparity").

Additionally, the applicable Guidelines range in this case flows from the loss amount, which accounts for twenty of the twenty-eight points comprising Mr. Rigo's total offense level prior to the three-point adjustment for acceptance of responsibility. (PSR ¶¶ 45-52.) As several courts have noted, the Guidelines place an undue weight on loss amount, which often serves as a poor proxy for, and potentially overstates, culpability and the seriousness of the offense. *See United States v. Stewart*, 590 F.3d 93, 154 (2d Cir. 2009) (Calabresi, J., concurring) (noting that "the culpability of an individual defendant might not be captured accurately by a single variable like financial impact"); *United States v. Adelson*, 441 F. Supp. 2d 506, 509, 515 (S.D.N.Y. 2006) (noting the "inordinate emphasis that the Sentencing Guidelines place in fraud cases on the amount of actual or intended financial loss" and imposing a non-Guidelines sentence); *United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004) (Guidelines provisions for theft and fraud "place excessive weight" on loss amount, which, in many cases, "is a relatively weak indicator of the moral seriousness of the offense or the need for deterrence").

In its submission, the Government continues to construe Mr. Rigo's decision to challenge its loss calculations (yielding as much as $30 million) as lack of contrition. (*See* Gov. Sent'g Br. at 10.) The Government is wrong to confuse these subjects. Mr. Rigo indicated his desire to plead guilty early in this case and did so. But he "has a due process right to reasonably contest errors in the PSR" and other factual assertions affecting his sentence, and "should not be punished for doing so." *United States v. Lee*, 653 F.3d 170, 174 (2d Cir. 2011).

Finally, Mr. Rigo has already shown himself to be compliant with court-ordered reporting obligations. (*See* PSR ¶ 7; Sent'g Op. at 16.) On September 17, 2013, the Court released him on bail in this case. We understand that in the ensuing nineteen months, he has been a model supervisee. Pretrial Services has found it unnecessary to require more of Mr. Rigo than a monthly in-person visit, accompanied by occasional unannounced home visits, none of which has presented any issue with respect to his supervision.

Hon. Robert W. Sweet
May 14, 2015                                                                        Page 4


     The defense recognizes that the crimes to which Mr. Rigo pleaded guilty are serious. But, in light of his advanced age, his health, the dependency of his adult son upon him for care, the reduced risk of recidivism flowing from his age, and the need to avoid unwarranted disparities in sentences, a sentence of four years in prison would be extraordinarily harsh.


                                Respectfully submitted,

                                  Joanna C. Hendon


cc:    AUSA Edward B. Diskant (by ECF and e-mail)
        AUSA Jason Masimore (by e-mail)