15-1914-cr
*United States v. Rigo*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

# SUMMARY ORDER

1:13-cr-00897-RWS-1

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of May, two thousand sixteen.**

PRESENT:   José A. Cabranes,
               Chester J. Straub,
               Raymond J. Lohier, Jr.,
                              *Circuit Judges.*

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __May 23, 2016__

---

United States of America,

     *Appellee,*

     v.         No. 15-1914-cr

Bladimir Rigo, AKA Bladi, AKA Sealed Defendant 1,

     *Defendant-Appellant.*

---

**FOR THE UNITED STATES OF AMERICA:**  Benet Kearney & Michael A. Levy, Assistant United States Attorneys, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY.

**FOR DEFENDANT-APPELLANT:**  Joanna C. Hendon, Spears & Imes LLP, New York, NY.

   Appeal from the June 2, 2015 judgment of the United States District Court for the Southern District of New York (Robert W. Sweet, *Judge*).

1

CERTIFIED COPY ISSUED ON 05/23/2016

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the cause is **REMANDED** for resentencing.

Defendant-appellant Bladimir Rigo ("Rigo") appeals from the District Court's June 2, 2015 judgment of conviction, which followed his guilty plea. Rigo argues that his sentence "was procedurally unreasonable because the District Court failed to make the two-pronged finding required by *United States v. Studley*, 47 F.3d 569 (2d Cir. 1995), before determining that the entire calculated amount of loss derived from [certain] . . . [r]ecords found in Mr. Rigo's home was attributable to him." Def.'s Br. 12. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Rigo and the Government agree that we should apply a plain-error standard of review to his argument. *See id.* at 14; Government's Br. 18–19. "To correct an error under this standard, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Taylor*, 816 F.3d 12, 18 (2d Cir. 2016) (alterations and internal quotation marks omitted). Upon independent review of the record and relevant law, we find this "demanding test" satisfied here. *United States v. Roemer*, 514 F.2d 1377, 1384 (2d Cir. 1975).

In *Studley*, we reiterated "that in order for a district court to sentence a defendant on the basis of criminal activity conducted by a coconspirator, a district court must make a particularized finding as to whether the activity was foreseeable to the defendant," and held that "the Guidelines also require the district court to make a particularized finding of the scope of the criminal activity agreed upon by the defendant." 47 F.3d at 574 (2d Cir. 1995); *see also United States v. Getto*, 729 F.3d 221, 234 (2d Cir. 2013) ("Before sentencing a defendant based on the conduct of co-conspirators, . . . a district court is required to make two particularized findings: (1) that the scope of the activity to which the defendant agreed was sufficiently broad to include the relevant, co-conspirator conduct in question; and (2) that the relevant conduct on the part of the co-conspirator was foreseeable to the defendant." (alterations and internal quotation marks omitted)).

"It is important to note that the scope of conduct for which a defendant can be held accountable under the sentencing guidelines is significantly narrower than the conduct embraced by the law of conspiracy." *United States v. Perrone*, 936 F.2d 1403, 1416 (2d Cir. 1991); *accord Getto*, 729 F.3d at 234 n.11; *see* U.S.S.G. § 1B1.3 cmt. n.1 ("The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. . . . [T]he focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a . . . conspirator."). This is because "the emphasis in substantive conspiracy liability is the scope of the *entire conspiracy*," while "the emphasis under [the Guidelines] is the scope of the *individual defendant's* undertaking." *United States v. Spotted Elk*, 548 F.3d 641, 673–74

2

Case 15-1911, Document 65, 05/23/2016, 1774237, Page3 of 4

(8th Cir. 2008) (emphases in original). As the commentary to the relevant section of the Guidelines explains, "the accountability of the defendant for the acts of others is limited by the scope of his or her agreement to jointly undertake the particular criminal activity. Acts of others that were not within the scope of the defendant's agreement, even if those acts were known or reasonably foreseeable to the defendant, are not relevant conduct" for sentencing purposes. U.S.S.G. § 1B1.3 cmt. n.3(B).

Here, it is clear that the District Court erroneously applied the law of conspiracy in calculating the loss amount attributable to Rigo. Specifically, the District Court held that, because "Rigo pled guilty to participating in a conspiracy, he is equally liable for the acts of his coconspirators, including others who may have written [the records found in Rigo's home], and the plans and intentions of the conspiracy, whether consummated or not." *United States v. Rigo*, 86 F. Supp. 3d 235, 242 (S.D.N.Y. 2015). The District Court cited two cases in support of this finding, including *United States v. Jackson*, 335 F.3d 170 (2d Cir. 2003), which it quoted for the proposition that, "[u]nder well-established law, [the defendant] was responsible not only for the cocaine he himself conspired to import but also for the cocaine his co-conspirators conspired to import, provided he knew of his co-conspirators' illicit activities or the activities were reasonably foreseeable by him." *Id.* at 181. But this quotation appears in a section of the opinion in which we were discussing whether the evidence introduced at trial was sufficient to support the jury's verdict that the defendant had conspired to import five or more kilograms of cocaine. *See id.* at 180–81. In other words, we were discussing the amount of cocaine in the context of *conspiracy* law, not *sentencing* law.

The District Court's application of the incorrect standard was "error, . . . that is plain." *Taylor*, 816 F.3d at 18. The law discussed above, including *Studley*, has been "clearly established," *United States v. Irving*, 554 F.3d 64, 78 (2d Cir. 2009), for at least two decades.

The District Court's error also "affect[ed] [Rigo's] substantial rights," *Taylor*, 816 F.3d at 18, which "[i]n the ordinary case" means that "there is a reasonable probability that the error affected the outcome," *United States v. Prado*, 815 F.3d 93, 102 (2d Cir. 2016) (internal quotation marks omitted). Here, the District Court's loss calculation was $2.9 million, $2.4 million of which was primarily based on the records found in Rigo's home. *See Rigo*, 86 F. Supp. 3d at 241–42. This calculation yielded an 18-level increase in the applicable Guidelines offense level. *See United States v. Rigo*, No. 13-CR-897 (RWS), 2015 WL 2240309, at *3 (S.D.N.Y. May 12, 2015).[1] If the District

---

[1] When Rigo was sentenced, Section 2B1.1(b)(1) of the Guidelines prescribed an 18-level enhancement for a loss between $2.5 million and $7 million. Section 2B1.1(b)(1) has since been amended, such that it now prescribes an 18-level enhancement only for a loss between $3.5 million and $9.5 million, but we "must generally apply the version of the Guidelines that [was] in effect at the time of sentencing," not the time of appeal. *United States v. Riggi*, 649 F.3d 143, 146 n.2 (2d Cir. 2011) (internal quotation marks omitted).

Case 15-191, Document 65, 05/23/2016, 1774137, Page4 of 4

Court had made the particularized findings that *Studley* requires, and if those findings had resulted in its exclusion of more than $400,000 of the $2.4 million traceable to the records, the offense level would have been lower.[2] Four-hundred-thousand dollars is only one-sixth of $2.4 million. Given that the District Court seems to have accepted "that the [records] were not all written in Rigo's hand," *Rigo*, 86 F. Supp. 3d at 242, we cannot say there is not a reasonable probability that the offense level would have been lower if not for the District Court's error, *cf. Gonzalez v. United States*, 722 F.3d 118, 135 (2d Cir. 2013) (observing that "'reasonable probability' is a less demanding standard than 'more likely than not'" in the context of an ineffective-assistance-of-counsel claim).

Lastly, the "possibility that the error resulted in the defendant's being [sentenced to] . . . a longer [term of imprisonment] . . . and the relatively low cost of correcting the [potential] miscalculation" convince us "that failure to notice the error would adversely affect the public perception of the fairness of judicial proceedings." *United States v. Wernick*, 691 F.3d 108, 118 (2d Cir. 2012); *see id.* at 117–18 (noting that "a remand for resentencing, while not costless, does not invoke the same difficulties as a remand for retrial does, and this facts weighs in our assessment of the fourth prong" (citation omitted)).

Having found plain error, we remand for resentencing. We do so, however, without placing a thumb on the scale with respect to what the District Court's particularized findings under *Studley* should be. We recognize that, on remand, the District Court's loss calculation may be no different than it was in the first instance.

## CONCLUSION

For the foregoing reasons, we **REMAND** the cause for resentencing.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[2] *See ante* note 1.



A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

4