UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X

UNITED STATES OF AMERICA,

                  Plaintiff,

    -against-                              13 Cr. 897 (RWS)

                                                          SENTENCING
BLADIMIR RIGO,                           OPINION

                  Defendant.

------------------------------------------X

**Sweet, D.J.**

On April 23, 2014, Bladimir Rigo ("Rigo" or "Defendant") pled guilty to two counts relating to health care fraud and conspiracy to commit health care fraud, with which he was charged in an indictment filed by the Government on November 14, 2013. For the reasons set forth below, Rigo will be sentenced to 48 months' imprisonment followed by three years' supervised release, subject to the scheduled sentencing hearing on May 29, 2015. Defendant is also required to pay restitution of up to $2.9 million and a special assessment of $200.

**Prior Proceedings**

Defendant was named in a two-count indictment (the "Indictment") filed in the Southern District of New York. Count 1 charged Defendant with committing health care fraud by trafficking in second-hand prescription medications, and ultimately causing health care benefit programs to pay for them under the false pretense that these were new, legitimately obtained medications, in violation of 18 U.S.C. § 1349. Count 2 charged Defendant with conspiring to commit the health care fraud offense describe in Count 1.

On April 23, 2014, Rigo pled guilty to both counts. On September 11, 2014, Rigo requested a hearing pursuant to United States v. Fatico, 603 F.2d 1053 (2d Cir. 1979), in order to resolve a dispute between the parties concerning the amount of loss attributable to Defendant as a result of the offense conduct. The hearing took place in November 2014 and final argument was heard on December 2, 2014. On January 28, 2015, the Court determined the loss reasonably attributable to Rigo is $2.9 million. Defendant is scheduled to be sentenced on May 19, 2015.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines.  Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

  (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

3

>   (5)   any pertinent policy statement . . . [issued by the Sentencing Commission];
>
>   (6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
>   (7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

The Court adopts the facts set forth in the PSR with respect to the offense conduct and as further described in the Court's January 29, 2015 Opinion following the Fatico hearing. These facts are summarized, in brief form, below.

4

Between approximately 2000 and September 2013, Rigo was involved in the unlawful diversion and trafficking of prescription drugs previously dispensed to health care benefit program enrollees, including Medicaid recipients ("second-hand drugs").

The second-hand drugs were originally dispensed to health care benefit plan enrollees, including Medicaid recipients, in the New York City area who then sold the drugs into collection and distribution channels that ultimately ended at pharmacies that resold the second-hand drugs to unsuspecting consumers. The scheme's participants profited by exploiting the difference between the cost to the patient of obtaining bottles of prescription drugs through their health insurance providers, including Medicaid - which typically was zero - and the hundreds of dollars per bottle that pharmacies paid to purchase those drugs to distribute to their customers.

To effectuate the fraudulent scheme, the lowest level participants in the scheme (the "Insurance Beneficiaries") filled prescriptions for month-long supplies of drugs at pharmacies throughout the New York City area and beyond, using health insurance benefits to pay the cost. Insurance

Beneficiaries sold their bottles of drugs to other participants in the scheme ("Collectors") at locations like street corners and bodegas in and around New York City, including in the Washington Heights neighborhood of Manhattan and in the Bronx. Collectors sold the second-hand bottles they collected to other participants in the scheme ("Aggregators"), who typically bought large quantities of second-hand drugs from multiple Collectors. Eventually, the second-hand drugs made their way to the highest-level Aggregators involved in the scheme, who sold the second-hand drugs into distribution channels, which ultimately led to pharmacies that re-dispensed the second-hand drugs to unsuspecting consumers.

After purchasing the second-hand bottles originally dispensed to Insurance Beneficiaries, Collectors and Aggregators used lighter fluid and other potentially hazardous chemicals to dissolve the adhesive on patient labels, and remove the patient labels and all traces of the adhesive from the bottles.  Through this process, the Collectors and Aggregators made the bottles appear new for the purpose of concealing the fact that they had already been dispensed, so that they would be re-sold to unsuspecting consumers.

The details of Rigo's involvement in the scheme are described more fully in this Court's January 29, 2015 Opinion. In summary, Defendant operated as a high-level aggregator of second-hand prescription medications, principally out of several bodegas he owned in the Newark, New Jersey area. He purchased and resold thousands of bottles of second-hand prescription medications over more than a ten-year period. The evidence adduced at the Fatico hearing established that the loss reasonably attributable to Rigo is $2.9 million.

**The Relevant Statutory Provisions**

The maximum term of imprisonment is ten years for Count 1. 18 U.S.C. § 1349. The maximum term of imprisonment is five years for Count 2. 18 U.S.C. § 371.

The Court may impose a term of supervised release of not more than three years for each count. 18 U.S.C. § 3583(b)(2). Multiple terms of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

Defendant is eligible for no less than one and no more than five years' probation under bouth Count 1, a Class C

7

Felony, and under Count 2, a Class D Felony. 18 U.S.C. § 3561(c)(1). A fine, restitution, or community service must be imposed as a condition of probation unless extraordinary circumstances exist. Multiple terms of probation shall run concurrently. 18 U.S.C. § 3564(b).

The fine for each count is up to $250,000. 18 U.S.C. § 3571(b). A special assessment of $100 is mandatory for each Count, for a total of $200. 18 U.S.C. § 3013.

Pursuant to 18 U.S.C. § 3663A, restitution in an amount up to $2.9 million shall be ordered in this case. Restitution is due and owed to Medicaid, to be paid care of the NYS Department of Health.

As a result of engaging in the conspiracy to commit health care fraud offense alleged in Count One of the Indictment, Defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense. Pursuant to Rule 32.2 of the Federal Rules of criminal procedure, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure

8

that the defendant knows of the forfeiture at sentencing.  The Court must also include the forfeiture order, directly or by reference, in the judgment."

**The Guidelines**

The November 1, 2014 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11.

The guideline for 21 U.S.C. § 846 offenses is found in U.S.S.G. § 2B1.1 of the guidelines, which provides a base offense level of 6.  An 18-level increase is warranted because the loss amount attributable to Defendant is $2.9 million.  U.S.S.G. § 2B1.1(b)(1)(J).  Because the defendant was convicted of a Federal health care offense involving a Government health care program, and the loss amount exceeded $1 million, the offense level is increased by 2 levels.  U.S.S.G. § 2B1.1(b)(7)(i).  The offense level is further increased by 2 levels because the offense conduct involved the conscious or reckless risk of death or serious bodily injury as second-hand drugs were re-dispensed and then sold as new, which placed anyone taking those second-hand drugs at risk because they were

not given complete and truthful information about the drugs they were ingesting.  U.S.S.G. § 2Dl.1(b)(15).

Rigo has clearly demonstrated acceptance of responsibility for the offense.  Accordingly, the offense level is decreased by two levels.  U.S.S.G. §3 El.1(a).

Rigo has assisted authorities in the investigation or prosecution of Defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level.  U.S.S.G. §3El.1(b).

Based on a total offense level of 25 and Criminal History Category of I, the guideline range of imprisonment is 57 months to 71 months.

The range for a term of supervised release is one to three years for each Counts.  U.S.S.G. § 5D1.2(a)(2).

Defendant is not eligible for probation.  U.S.S.G. § 5B1.1, comment 2.

10

The fine range for these offenses is $10,000 to $5.8 million.  U.S.S.G. § 5E1.2(c)(3) and (4).

Costs of prosecution shall be imposed on Defendant, as required by statute.  U.S.S.G. § 5E1.5.  In determining whether to impose a fine and the amount of such a fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed.  U.S.S.G. § 5E1.2(d)(7); 18 U.S.C. § 3572(a)(6).  These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs.  The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2014, provides a daily cost of $80.25, a monthly cost of $2,440.97, and an annual cost of $29,261.62 for imprisonment.

The Guidelines contemplate restitution being ordered. U.S.S.G. § 5E1.1.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified

in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.  In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is not warranted in the instant case.

Rigo is 74 years old and suffers from several health problems, as described in detailed in the PSR.  He appears to have a supportive family and children with whom he has a good relationship.  One of his sons has special needs, and lives with Rigo and Rigo's wife so that they may help care for him.  Given Defendant's age, health, and family situation, a sentence of 48 months' imprisonment is sufficient to accomplish the goals of sentencing.

**The Sentence**

For the instant offense, Rigo shall be sentenced to 48 months' imprisonment to be followed by three years' supervised release.

As mandatory conditions of his supervised release, Defendant shall:

(1)  Not commit another federal, state, or local crime.

(2)  Not illegally possess a controlled substance.

(3)  Not possess a firearm or destructive device.

(4)  Refrain from any unlawful use of a controlled substance.  Defendant shall submit to one drug testing within 15 days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

(5)  Cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

(1)  Defendant shall provide the probation officer with access to any requested financial information.

(2)  Defendant shall not incur new credit charges or open additional lines of credit without the approval of the

probation officer unless Defendant is in compliance with the installment payment schedule.

(3) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(4) Defendant is to report to the nearest Probation Office within 72 hours of release from custody.

(5) Defendant will be supervised by the district of residence.

It is further ordered that Defendant shall pay to the United States a special assessment of $200, which shall be due immediately.

Defendant does not have the ability to pay a fine, therefore the fine in this case is waived.

Defendant shall forfeit his interest in any property constituting proceeds from the offense to the United States. See 18 U.S.C. § 982(a)(7); Fed. R. Crim. P. 32.2.

Defendant shall make restitution of up to $2.9 million payable to:

> NYS Department of Health
> Attn: Mr. Dennis Wendell, Chief Accountant
> Fiscal Management Group
> Coming Tower, Room 2737
> Empire State Plaza
> Albany, New York 12237

If Defendant is engaged in a Federal Bureau of Prisons (BOP) non-UNICOR work program, he shall pay $25 per quarter toward the criminal financial penalties. However, if Defendant participates in the BOP's UNICOR program as a grade 1 through 4, he shall pay 50% of his monthly UNICOR earnings toward the criminal financial penalties, consistent with BOP regulations. See 28 C.F.R. § 545.11.

Restitution shall be paid in monthly installments of 10% of gross monthly income over a period of supervision to commence 30 days after the date of the judgment or the release from custody if imprisonment is imposed.

The defendant shall notify the United States Attorney for this district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

Defendant is eligible for voluntary surrender. He has kept all court appearances and has been in compliance with the terms and conditions of his pretrial release. He is not viewed as a flight risk or a danger to the community.

It is so ordered.

**New York, NY**
**May 8, 2015**

_____
ROBERT W. SWEET
U.S.D.J.